UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIMBERLY P,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Case No. 1:22-cv-596

Bowman, M.J.

**MEMORANDUM OPINION AND ORDER**

Plaintiff filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three claims of error for this Court's review.[2] As explained below, the Court will AFFIRM the ALJ's finding of non-disability because it is supported by substantial evidence in the record as a whole.

**I. Summary of Administrative Record**

On August 18, 2020, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"), alleging disability beginning on December 1, 2018 based upon back pain, prior back surgeries, and numbness in her left leg. (Tr. 221). After her claim was denied initially and upon reconsideration, Plaintiff requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On August

---

[1] Due to significant privacy concerns in social security cases, this Court refers to claimants only by their first names and last initials. *See* General Order 22-01.
[2] The parties have consented to final disposition before the undersigned magistrate judge in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

1

3, 2021, Plaintiff appeared telephonically with her attorney and gave testimony before ALJ Renita Blevins; a vocational expert also testified. (Tr. 54-102).

Plaintiff was 37 years old on her alleged disability onset date and remained in the younger individual age category at the time of the ALJ's decision. She has a tenth grade education, (Tr. 60), and reported past work as a deli assistant manager, a K-Mart retail associate, stocker, advertisement displayer, lead cashier, and beauty-supply sales associate and stocker.(Tr. 61-67; *see also* Tr. 28). She has three children, ages 3, 6, and 22, and lives with them and her mother in a single family home. (Tr. 60, 815). Plaintiff reported that the children's father assists with the care of the youngest children as does her eldest son.[3] (Tr. 23, 240). However, she also reported that she cares for her youngest child "all day" and picks up her other child from school. (Tr. 815).

On August 12, 2021, the ALJ issued an adverse written decision that concluded that Plaintiff is not disabled.(Tr. 14-31). The ALJ determined that Plaintiff has the following severe impairments: "Disorders of the back (discogenic and degenerative), obesity, and asthma." (Tr. 16). The ALJ also found that Plaintiff has the medically determinable but nonsevere impairments of hypertension and depressive/bipolar disorder. (Tr. 17-18). Considering all of Plaintiff's severe and nonsevere impairments, the ALJ determined that none, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 19)

---

[3] At a psychological exam conducted on March 2, 2021, Plaintiff similarly reported receiving help from her mother, oldest son, and the children's father. (Tr. 813-814).

The ALJ next determined that Plaintiff retained a Residual Functional Capacity ("RFC") that permits her to perform a range of light work, subject to the following additional limitations:

> able to lift and carry up to 20 pounds occasionally and 10 pounds frequently; able to stand and/or walk 4 hours per 8 hour day and sit 6 hours per 8 hour day with normal breaks. Can never climb ladders, ropes or scaffolds. Can frequently climb ramps and stairs. Can frequently balance as defined in the Selected Characteristics of Occupations (SCO). Can occasionally stoop, kneel, crouch, and crawl. Must avoid concentrated exposure to dust, fumes emitting machinery, and poor ventilation. Should avoid all exposure to unprotected heights of ladders, ropes, or scaffolds, and operation of dangerous moving machinery.

(Tr. 21).

Based upon Plaintiff's age, education, and RFC, and considering testimony from the vocational expert, the ALJ found that Plaintiff could continue to perform four of her past jobs, including one skilled position, two semi-skilled positions, and one unskilled job. (Tr. 29). In the alternative, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including the representative positions of cafeteria worker, cashier II, and furniture rental clerk, all of which are classified at the light unskilled level. (Tr. 30). Therefore, the ALJ determined that Plaintiff was not under a disability. (*Id*.) The Appeals Council denied further review, leaving the ALJ's decision as the final decision of the Commissioner.

In this appeal, Plaintiff argues that the ALJ erred: (1) by failing to reconcile inconsistencies between the DOT and the VE's testimony; (2) by failing to appropriately assess the agency physicians' opinions; and (3) by failing to develop the record by soliciting additional opinion evidence. The Court finds no error.

3

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

4

*Id.* (citations omitted). *See also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (holding that substantial evidence is evidence a reasonable mind might accept as adequate to support a conclusion and that the threshold "is not high").

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

B. **Plaintiff's Claims of Error**

Prior to turning to Plaintiff's specific claims, the undersigned notes that Plaintiff does not *directly* challenge the RFC as determined, nor does she challenge the adverse

credibility/consistency determination made by the ALJ that her statements were "not entirely consistent with the medical record and other evidence," and that her medical records "are not consistent with allegations of disabling impairments. (Tr. 24).

### 1. Alleged Inconsistency Between the DOT and the VE's Testimony

Although Plaintiff does not directly challenge the limitations determined by the ALJ in this case, she indirectly challenges the RFC in her first claim insofar as she challenges the ALJ's reliance upon the VE's testimony in response to the hypothetical RFC. Specifically, she argues that the ALJ failed to explain an alleged conflict between the DOT definition of light work and the hypothetical RFC about which the VE testified.

The relevant regulations define exertional levels in terms of the amount of weight an individual can lift and carry. Because the ability to lift and carry implies some ability to stand and walk, exertional categories also define postural abilities. While exceptions exist, the amount of standing and/or walking constitutes "the primary difference between sedentary and most light jobs." SSR 83-10, 1983 WL 31251 at *5, Thus, light work is defined as the ability to lift up to 20 pounds at a time, with "*frequent* lifting or carrying of objects weighing up to 10 pounds." *Id*. (emphasis added). "Frequent" is defined as a range that falls somewhere between one third and two thirds of the workday. *Id*. at *6. In other words, a <u>full</u> range of light work requires "standing or walking, off and on" for *up to* "approximately 6 hours of an 8-hour workday." (*Id*.)

Just because the DOT describes a representative job as falling within the "light" category, however, does not mean that the position requires the *maximum* number of

6

hours of standing and walking.[4] *See Icke v. Comm'r of Soc. Sec.*, Case No. 1:16–cv–01208, 2017 WL 2426246 at *5, 7 (N.D. Ohio May 16, 2017) (light work may include less than 6 hours of standing and walking), R&R adopted 2017 WL 2418729 (N.D. Ohio June 2, 2017). In fact, using the definitional range of hours for "frequent" lifting and carrying under SSR 83-10, an individual with the ability to stand and/or walk for only one-third of an 8-hour workday (2.67 hours) still would be capable of at least some portion of "light" work *See Wilkerson v. Commissioner of Social Security*, 278 F.Supp.3d 956, 970 (E.D. Mich. 2017). Here, the ALJ determined that Plaintiff remained capable of work within the "light" exertional range notwithstanding her additional limitation to standing and/or walking no more than 4 hours per day.

Plaintiff now argues that in the absence of an explanation by the VE or the ALJ for the discrepancy between the *maximum* standing/walking capabilities of light work and the 4-hour limitation defined by the ALJ, this case must be reversed. The Court finds no error for multiple reasons.

First, Plaintiff's argument is unpersuasive because the non-disability determination can be upheld based solely on the ALJ's Step 4 analysis. At Step 4 of the sequential analysis, it was Plaintiff's burden to prove that she could not perform any of her prior relevant work. But the VE testified that an individual limited to standing and/or walking no more than 4 hours could perform three of Plaintiff's past positions *as she actually*

---

[4] To the extent that Plaintiff suggests that a limitation to less than six hours of standing or walking required the ALJ to restrict her to the sedentary exertional level, her argument is contrary to binding Sixth Circuit case law. *Wright v. Massanari*, 321 F.3d 611, 615–15 (6th Cir. 2003)

*performed them* – irrespective of their classification provided under the DOT.[5] The ALJ "accept[ed] and concur[red] with" that testimony. (Tr. 29). Specifically, the ALJ found that Plaintiff could perform the skilled work of counter clerk as she had actually performed it at the sedentary exertional level. (*Id.*) The ALJ found she could perform two additional past semi-skilled jobs – cashier and retail sales associate - as actually performed, as well as how those jobs are generally performed according to the DOT. (*Id.*)  Neither at the hearing nor before this Court has Plaintiff identified any conflict between the hypothetical RFC limitations and the three past relevant jobs that the VE testified she could continue to perform *as she actually performed them*. Because Plaintiff failed to carry her burden that she could not perform her past relevant work as she actually performed it at Step 4, the ALJ's decision is substantially supported.

To be fair, Plaintiff focuses her argument not on the ALJ's additional conclusion at Step 4 but instead on the alternative conclusion at Step 5 that she remains capable of performing several jobs at the light exertional level as described in the DOT, including but not limited to some prior jobs. But even focusing on the DOT, Plaintiff's argument remains unpersuasive. Prior to eliciting the VE's testimony, the ALJ asked the VE to verify that she was familiar with the SSA regulations defining the exertional levels and to advise of any opinion "that conflicts with" the DOT. The VE affirmatively testified that she was aware of the regulatory definitions and that she would advise of any conflicting opinions. (Tr. 87).

In response to the ALJ's hypothetical question, the VE unequivocally testified that an individual with Plaintiff's limitations, including the 4-hour standing/walking restriction,

---

[5]Based upon the VE's testimony, the ALJ identified a fourth prior position – the unskilled job of deli cutter/slicer – that Plaintiff could perform at the light exertional level described in the DOT but not at the medium exertional level at which she had previously performed it. (Tr. 29).

could perform several representative jobs at the light exertional level. The fact that the VE did not identify any conflict with the DOT after affirmatively verifying that she would identify conflicts suggests that no actual conflict existed.[6] As discussed, light work is defined in terms of an exertional range of activity, and a limitation to 4 hours of standing/walking falls within that range.

When a claimant is limited to less than the full range of an exertional category, VE testimony usually is required. Here, the ALJ appropriately defined Plaintiff's limitations and the VE testified that such an individual still could perform specific representative jobs in the light work category. The VE's testimony therefore substantially supports the ALJ's decision. *See generally*, *Blankenship v. Commissioner of Social Security*, 624 Fed. Appx. 419, 428-429 (6th Cir. 2015) (affirming ALJ's decision that plaintiff could perform "light work" despite limitation to standing/walking for only two hours in an eight-hour workday based upon VE testimony); *Hepburn v. Comm'r of Soc. Sec.*, Case No. 2:17-cv-124, 2018 WL 1373870, at *9 (S.D. Ohio March 19, 2018) (affirming where the VE "unequivocally testified that someone with Plaintiff's RFC, which included a standing/walking restriction of four hours, could perform the light, unskilled jobs upon which the ALJ relied at step five."); *Sniarowski v. Colvin*, Case No. 1:14-cv-2841, 2016 WL 1084757, at *10-11 (N.D. Ohio Jan. 25, 2016) (holding that the ALJ did not err by asking the VE to provide jobs within the "light" category notwithstanding additional standing/walking limitations to 4 hours).

---

[6] None of the DOT descriptions for the representative jobs to which the VE testified indicate a need for more than 4 hours of standing or walking. *See*, *e.g.*, *Kocher v. Comm'r of Soc. Sec.*, Case No. 2:14-cv-2263, 2015 WL 7307998 at *4 (S.D. Ohio Nov. 20, 2015), adopted at 2015 WL 9489750 (Dec. 30, 2015) (finding no error given the lack of any explicit conflict between the VE's testimony and the DOT).

**2. The ALJ's Evaluation of Agency Medical Opinion Evidence**

In her second claim of error, Plaintiff criticizes the ALJ's written analysis of the medical opinion evidence, which was limited to medical and psychological opinions provided by examining and reviewing agency consultants. Two agency reviewing physicians opined on Plaintiff's physical limitations at the initial and reconsideration levels. Both determined that Plaintiff could perform light work including the ability to stand, walk and/or sit for up to 6 hours in an 8-hour workday, frequently climb ramps and stairs, never climb ladders, ropes or scaffolds, occasionally stoop, kneel, crouch and crawl, and avoid exposure to hazards. (Tr. 108-109, 123-24). Considering their opinions, the ALJ wrote:

> The assessments of the state agency, which limit the claimant to a light exertional level, and which conclude that the claimant has no severe mental impairments, are generally persuasive, although the undersigned finds that the claimant's hypertension is non-severe (Exhibits 3A, 4A, 7A, and 8A).

(Tr. 27).

Plaintiff argues that this Court should reverse and remand based upon the failure of the ALJ to sufficiently expound upon the "supportability" and "consistency" of the referenced opinions. Notably, Plaintiff does not identify a single limitation that was included in the agency physicians' opinions that the ALJ declined to adopt. Rather, Plaintiff urges this Court to reverse and remand solely for additional discussion.

The Court declines to reverse on this slim reed. "[T]he regulations that require ALJs to explain their analysis of the supportability and consistency factors do not require those explanations to contain a specific level of detail," but instead contemplate that "the appropriate level of articulation will necessarily depend on the unique circumstances of each claim." See *Chad T. v. Comm'r of Soc. Sec. Admin.*, Case No. 3:21-cv-00052, 2022 WL 4355001 at *8 (S.D. Ohio Sept. 20, 2022) (quoting Evaluation of Medical Evidence,

82 Fed. Reg. 5844, 5854 (Jan. 18, 2017)). Reading the opinion as a whole, the ALJ's more detailed discussion of both the medical record and the nonmedical record, including Plaintiff's daily activities, strongly supports her succinct exposition of the supportability and consistency of the agency physicians' opinions. In addition to concluding that their opinions were only "generally" persuasive, the ALJ adequately explained why she was adding additional limitations including but not limited to a restriction to only 4 hours of standing/walking.[7]

Plaintiff's failure to identify any limitation in the medical opinions that the ALJ should have found but did not translates to a failure to show how she suffered any prejudice. Even if this Court were to accept Plaintiff's argument that the ALJ could have improved upon her articulation of the relevant factors when discussing the agency opinions, this Court will not remand for harmless error. *See McQuillen v. Comm'r of Soc. Sec.*, Case No. 2:20-cv-6006, 2021 WL 6133277 at *7 (S.D. Ohio Dec. 29, 2021) (holding that any possible error was harmless where ALJ adopted more restrictive limitations than agency physicians on whose opinions he relied), adopted at 2022 WL 867270 (S.D. Ohio Mar. 23, 2022).

### 3. The ALJ's Alleged Failure to Develop the Record

Plaintiff's third claim is a variation of her second. She argues that the ALJ did not adequately explain how she used the agency physicians' opinions to support the RFC as determined, and/or that the ALJ should have solicited additional medical opinion evidence. In her reply memorandum, Plaintiff clarifies that she is not arguing that an ALJ

---

[7] Unsurprisingly, Plaintiff does not complain about the ALJ's adoption of those *additional* limitations.

11

must base every RFC limitation on a specific medical opinion. (*See* Doc. 10 at 3, PageID 1022). Indeed, "[t]he Social Security Act instructs that the ALJ – not a physician – ultimately determines a claimant's RFC." *Coldiron v. Comm'r of Soc. Sec.*, 391 Fed. Appx. 435, 439 (6th Cir. 2010); *see also Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157 (6th Cir. 2009). Still, Plaintiff's primary contention -- that the ALJ failed to develop the record because there were "no examining opinions in the record" concerning Plaintiff's physical limitations[8] - confuses the ALJ's burden with her own.

"Promoting the claimant's case… is not the ALJ's obligation." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 563 (6th Cir. 2022). It is "[o]nly under special circumstances, i.e., when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures" that an ALJ has "a special, heightened duty to develop the record." *Trandafir v. Comm'r of Soc. Sec.*, 58 Fed. Appx. 113, 115 (6th Cir. 2003). The majority in the recent *Moats* case held that such a duty arises only when the record reflects "extreme" circumstances, rather than in every case in which a litigant represents himself. *Id.*, 42 F.4th at 564. It is abundantly clear that no such duty exists when a litigant is represented by counsel as Plaintiff was here.

Plaintiff criticizes the fact that the two agency physicians offered identical physical RFC opinions despite the fact that their opinions were separated by approximately six months of additional development of the record. Plaintiff suggests that because both agency reviewers lacked access to and/or failed to discuss her most recent records, the ALJ should have "ordered a consultative examination…." (Doc. 8 at 13, PageID 997). But

---

[8] An agency psychologist conducted an examination of Plaintiff prior to rendering mental RFC opinions, but the agency physicians examined only her records.

12

"[t]here will always be a gap between the time the agency experts review the record and … the time the hearing decision is issued." *Kelly v. Comm'r of Soc. Sec.*, 314 Fed. Appx. 827, 831 (6th Cir. 2009). Given that it was Plaintiff who bore the burden of proof in this case, Plaintiff herself might have offered additional opinions or other evidence from her own treating or examining physicians. The fact that she did not does not shift the burden to the ALJ.

Here, the ALJ considered all relevant evidence that post-dated the reviewing physicians' opinions and expressly cited to that evidence as a basis for additional limitations. Even though the medical opinion evidence was limited to that offered by agency physicians and psychologists, the record nevertheless contained sufficient evidence for the ALJ to evaluate Plaintiff's claim. "[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding." *Poe*, 342 Fed. Appx. at 157. In addition to the referenced opinions, the ALJ considered and thoroughly discussed objective medical evidence, clinical examination findings (*see* Tr. 24-27), and multiple reports concerning Plaintiff's activities of daily living, (*see* Tr. 21-24). In short, the ALJ had no duty to elicit further medical opinion evidence on the record presented. *Accord Culp v. Comm'r of Soc. Sec.*, 529 Fed. Appx. 750, 751 (6th Cir. 2013) (ALJ had no duty to elicit an additional medical opinion given the "considerable amount" of evidence in the record and fact that plaintiff was represented by counsel).

### III. Conclusion and Order

13

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence, and that this case be **CLOSED.**

*s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge
